IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | |
| ) | |
| Plaintiff,   ) | **CRIMINAL ACTION** |
| ) | |
| v.                              ) | No.  07-10221-MLB |
| ) | |
| MICHAEL W. BIGLOW,              ) | |
| ) | |
| Defendant.   ) | |
|                                 ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to suppress items seized pursuant to a search warrant. (Doc. 125). The motion has been fully briefed and is ripe for decision. (Docs. 126, 141, 143).  Defendant's motion to suppress is granted for the reasons herein.

**I.    Facts**

In addition to facts concerning defendant's activities, the affidavit attached to the application for the search warrant also contains the activities of Tyrone Andrews, a co-defendant.  Wichita police were conducting surveillance on Andrews' activities and they also had received authorization for a wiretap.  Facts surrounding the investigation of Andrews and other co-defendants can be found in this court's prior orders.  (Docs. 117 and 122).

The following are relevant excerpts, specific to defendant, from the affidavit pertaining to the search in question:

> On July 10, 2007, detectives observed Andrews arrive at 1821 S. Ridgewood.  A little while later a black male arrived at the residence on Ridgewood in a Silver Vovlo SUV and walk into the residence carrying a black briefcase.  The black male was inside the residence for

approximately a half hour and then left carrying the black briefcase. The SUV was followed by surveillance units and was stopped by a Wichita Police Department officer just south of Kellogg and Rock R. The black male was identified by a Kansas driver's license as Michael W. Biglow, 9320 N. Hydraulic, date of birth: April 26, 1965. The officer observed the black briefcase on the front passenger seat of the SUV. The officer issued Biglow a citation and then released him.

On July 27, 2007, CS3 reported to detectives that Andrews contacted CS3. CS3 said Andrews was concerned that people were talking to the police and that they might be watching his spot. CS3 said Andrews told CS3 that the police followed someone he sold two kilos of cocaine to recently. According to CS3 Andrews said the police stopped this person in the area of Kellogg and Rock Rd. after following him for around twenty blocks.

\* \* \*

On September 10, 2007, Andrews received an incoming call on TARGET TELEPHONE 2 from telephone number 316-644-4504. Subscriber records show 316-644-4504 is in the name of Michael Biglow, 9320 N. Hydraulic, Wichita, KS. The male caller asks Andrews "how we lookin?" Andrews asks who it is and the male caller identified himself as "Big." Andrews tells Big that the "other people, they said today but they ain't called me." Big indicated he'd call Andrews back later.

On September 11, 2007, Andrews received an incoming call on TARGET TELEPHONE 2 from 316-644-4504. The male caller asked Andrews if they could hook up today or tomorrow.

\* \* \*

On September 12, 2007, Andrews received an incoming call on TARGET TELEPHONE 2 from 316-644-4504. The male caller asked what was happening. Andrews told the male caller he'd probably get back with him tomorrow indicating he needed to talk to his people first and that "Fat Boy" had called and he needed to see what he wanted. Andrews said after he talked to Fat Boy he might have to "go mess with my regular people."

On September 13, 2007, Andrews received an incoming call on TARGET TELEPHONE 2 from 316-644-4504. The male caller asked Andrews if his "boy come through." Andrews said he had and the male caller asked, "how many points is that?" Andrews indicated it was "one-nine" and then the male caller asked him to repeat that. After Andrews

-2-

>    repeated it the male caller said "okay, uh two." Andrews said okay and the male caller said he'd call Andrews when he got off work.
>
>    On September 14, 2007, at 1727 hours, Andrews placed and [sic] outgoing call on TARGET TELEPHONE 2 to 316-644-4504. A male answered the call and indicated he was getting ready to go to work to which Andrews responded it was about time. The male then said "I'm gonna take it with me." Andrews responded, "Alright, just call me."
>
>    On September 14, 2007, at 1838 hours, Andrews received an incoming call on TARGET TELEPHONE 2 from 316-644-4504. A male said he was at the job and asked if anything was about to come through. Andrews answered probably the next thirty to forty minutes.
>
>    On September 14, 2007, surveillance units followed Andrews to the Bradley Fair parking lot at 21st and Rock Rd. [Biglow's place of employment] where Andrews was observed meeting with Michael Biglow. A detective who was monitoring their activities saw Andrews contacting Michael Biglow in the parking lot but had his view obstructed briefly by another vehicle. Surveillance units then observed Andrews and Biglow standing next to their vehicles talking for a few minutes.
>
>    On September 21, 2007, Andrews received an incoming call on TARGET TELEPHONE 2 from 316-644-4504. The male caller asks, "How we lookin' man?" Andrews responds that he hasn't heard from Fat Boy. The male caller then asks Andrews what about the "high boy?" Andrews replies, "And then the high boy, shit they only had them other ones left and I got them last night." Andrews then tells the caller that he's on the last one now and the caller wanted to know "What you, what you lettin' it go for?" Andrews told the caller he couldn't have it because he already has it sold. In further conversation the caller asks Andrews "Damn, so Fat Boy ain't called you back? Your high people coming any time soon?" Andrews told the caller it would be a week.
>
>    Detectives have learned through this investigation that "Fat Boy" is a Hispanic male by the name of Jose Pizana who Andrews has purchased several kilos of cocaine from. Detectives have observed another Hispanic male over the last several months arrive at 1821 S. Ridgewood for a few minutes carrying a brown bag into the residence, which they believe to be the "high dollar" source of cocaine to Andrews.

(Doc. 126, exh. 1).

On September 26, 2007, Magistrate Judge Donald Bostwick authorized officers to conduct a search at 9320 N. Hydraulic. The search was conducted on September 27, 2007.

## II.  Analysis

Defendant argues that probable cause did not exist for the search warrant because there was no evidence that a drug transaction occurred at the residence and that the conversations documented by officers did not indicate that drugs were being discussed. Defendant also alleges that the challenged evidence is not admissible under the "good faith" exception to the exclusionary rule.

### 1.  Probable Cause

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The validity of a warrant is not determined by "nit-picking" discreet portions of the application. Rather, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-39 (1983); United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a substantial

basis for concluding that probable cause existed.'" (internal citation omitted)).

Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." <u>Harris</u>, 369 F.3d at 1165 (quoting <u>United States v. Hernandez-Rodriquez</u>, 352 F.3d 1325, 1330 (10th Cir. 2003)). The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched." <u>United States v. Rowland</u>, 145 F.3d 1194, 1203-04 (10th Cir. 1998)(quoting <u>United States v. Corral-Corral</u>, 899 F.2d 927, 937 (10th Cir. 1990)).

The Supreme Court has observed that "a magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" <u>Gates</u>, 462 U.S. at 236 (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969)). In doing so, reviewing courts must apply the totality of the circumstances test:

> The task of the issuing magistrate judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for. . . conclud[ing] that probable cause existed.

<u>Gates</u>, 462 U.S. at 238-39 (internal citation omitted).

Defendant argues that probable cause was lacking to support the search warrant because no nexus existed to connect any illegally activity to the location searched and that the recorded conversations

-5-

do not establish that a drug transaction was being discussed.  The Tenth Circuit requires that a "nexus [exist] between the contraband to be seized or suspected criminal activity and the place to be searched." <u>United States v. Gonzales</u>, 399 F.3d 1225, 1228 (10th Cir. 2005).  In this case, the affidavit does not establish that drug activity was observed at the home being searched.  The affidavit does establish the following: 1) defendant was seen with a black briefcase entering and leaving a location that is a stash house of Andrews, a known drug dealer; 2) a confidential informant disclosed that Andrews was concerned because the police stopped an individual to whom the dealer had just sold two kilograms of cocaine; 3) defendant made numerous calls to Andrews inquiring about whether Andrews had heard from his known suppliers; 4) the location searched was defendant's residence and that information was known at the time of the affidavit; and 5) defendant met with Andrews at his place of employment after phoning him and telling him that he was "bringing it with" him to work.

Unlike the government's assertion, the affidavit has not established that Andrews and defendant were conversing about a drug transaction on the telephone in that the affidavit lacks any evidence that the numbers discussed signify drug quantities.  Also, there is no direct information from the confidential informant or a surveilling officer that an actual drug transaction occurred.  Moreover, the affidavit's only assertion regarding the residence is the officer's statement that "[b]ased upon training and experience, your Affiant knows that people frequently maintain their financial records and work related documents in their homes." (Doc. 126, exh. 1 at 15).  This

-6-

statement could apply to anyone, including federal judges.

"[T]he mere fact that an affidavit does not contain personal knowledge of illegal activity at the residence is not fatal to the determination of probable cause. . . Where an affidavit describes circumstances which would warrant a person of reasonable caution to believe that the articles sought would be at appellant's residence, then a sufficient nexus has been established." United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars ($149,442.43) in U.S. Currency, 965 F.2d 868, 874 (10th Cir. 1992)[1]; see also United States v. Jimenez, No. 05-2152, 2006 WL 3236503 (10th Cir. Nov. 9, 2006)("the affidavit supporting the search warrant need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched.")

In One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars ($149,442.43) in U.S. Currency, 965 F.2d 868, the court found that probable cause existed to believe that the defendant's residence would contain records of drug transactions after the affidavit from the officer that drug dealers kept records in their homes and evidence that the defendant was a large drug dealer and had been for many years. Therefore, the court found that it was reasonable to believe that he would keep records in his home. In this case, the affidavit shows two separate interactions with Andrews. However, no other evidence supports a conclusion that defendant was

---

[1] More recently, the Tenth Circuit cited One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars in U.S. Currency, 965 F.2d 868, for the proposition that "courts may properly rely on an officer's experience in finding probable cause." Gonzalez, 399 F.3d 1225, 1231.

-7-

supplying drugs to any other individuals. Rather, based on the evidence, it is only plausible to believe that defendant may have purchased drugs from Andrews on two occasions (but, again, there was no visual or informant confirmation that a sale took place). However, no evidence supports the conclusion that records of drug sales and/or co-conspirators would be found at the residence, i.e. evidence that defendant in turn sold those drugs to any individuals or that he returned home with the drugs in tow. Therefore, it would be a stretch to presume that defendant would have records of drug transactions in his home, a location that was never visited by anyone.

The court finds that the affidavit was insufficient to establish that probable cause existed to search 9320 N. Hydraulic.

### 2. Good Faith Exception

Even though the affidavit was legally insufficient, the court may uphold the search if the officers executing the search warrant acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate. See United States v. Leon, 468 U.S. 897 (1984).

The Supreme Court recognizes four situations in which an officer would not have reasonable grounds for believing a warrant was properly issued. In these situations, the good-faith exception to the exclusionary rule would not apply.

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his "reckless disregard of the truth." Second, the exception does not apply when the "issuing magistrate wholly abandon[s her] judicial role." Third, the good-faith exception does not apply when the affidavit in support of the warrant is

-8-

> "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000) (citing throughout United States v. Leon, 468 U.S. 897 (1984)).

Defendant argues that reliance on the affidavit by officers in executing the search warrant was unreasonable, in violation of Leon. When reviewing the reasonableness of an officer's reliance upon a search warrant, a court "must examine the underlying documents to determine whether they are 'devoid of factual support.'" United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000) (quoting United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993)).

The government makes the argument that the Leon good faith exception should apply because "officers are entitled to rely upon the probable cause determination of a neutral and detached magistrate" and "the officers were justified in relying upon the magistrate's determination that probable cause existed to search defendant Biglow's residence." However, no nexus exists between the residence and evidence of the documents sought to seized. An experienced officer would know that the Circuit requires that nexus to exist. A complete lack of any nexus cannot be saved by the Leon good faith exception. United States v. Gonzalez, 399 F.3d 1225, 1231 (10th Cir. 2005). Based on the facts set forth in the affidavit the court fails to see how an officer could reasonably believe that documents indicative of drug sales, i.e. narcotics ledgers, distribution lists, etc., would be found in the residence.

In a similar case to the one at bar, the Sixth Circuit found that the Leon good faith exception did not apply and that the evidence seized from the search must be suppressed. United States v. Laughton, 409 F.3d 744, 751-52 (6th Cir. 2005). In that case, the officers used a confidential informant to buy drugs from the defendant on two occasions. The officers then sought a warrant for the location believed to be used by the defendant. The court determined that the "two acontextual allegations" against defendant were not sufficient to establish a nexus between the residence and the items sought and that no "reasonable officer could have believed that the affidavit was not so lacking in indicia of probable cause as to be reliable." Id. at 751.

Similar to Laughton, the affidavit in this case is so lacking in indicia of probable cause that no reasonable officer would believe that it was reliable. There is absolutely no support for the conclusion that any evidence of criminal activity would be discovered at the residence.

Defendant's motion to suppress is granted.


IT IS SO ORDERED.

Dated this __6th__ day of June 2008, at Wichita, Kansas.


                                                  s/ Monti Belot
                                                  Monti L. Belot
                                                  UNITED STATES DISTRICT JUDGE